IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DEBRA EVANS LOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV1073 |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Debra Lott ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on November 27, 2012, alleging a disability onset date of July 4, 2007. (Tr. at 349, 497-505.)[2] Her claim was denied initially (Tr. at 426-29, 388-412), and that determination was upheld on reconsideration (Tr. at 413-25, 432-

---
[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #6].

39). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 440.) Plaintiff attended the subsequent hearing on February 12, 2015, along with her attorney and an impartial vocational expert. (Tr. at 349.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 357), and, on August 4, 2016, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, because Plaintiff only applied for Title II Disability Insurance Benefits, she was required to show that she suffered from a disability on or before December 31, 2012, her Date Last Insured ("DLI"). At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since July 4, 2007, her alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ determined that Plaintiff suffered from three severe impairments prior to December 31, 2012: obesity, headaches, and asthma. (Tr. at 351.) The ALJ found at step three that none of these impairments, either individually or in combination, met or equaled a disability listing.

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

(Tr. at 352.) Therefore, the ALJ assessed Plaintiff's RFC and determined that, through December 31, 2012, she could perform medium work but "must avoid concentrated exposure to unprotected heights, moving machinery, and respiratory irritants including dust, fumes, gases, etc." (Tr. at 352-53.) Based on this determination, the ALJ determined at step four of the analysis that Plaintiff could not perform any of her past relevant work. (Tr. at 355.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 356.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 357.)

Plaintiff now contends that the ALJ erred in two respects. First, she argues that the ALJ erred by failing to give controlling weight to the opinions of Plaintiff's two treating neurologists, Drs. Chris Connelly and Russ Bodner. (Pl.'s Br. [Doc. #9] at 2.) Second, Plaintiff contends that the ALJ "failed to consider all of the evidence in view of [Plaintiff's] amended onset date of April 7, 2010." (Id. at 7.) After a thorough review of the record, the Court finds that neither of these arguments merit remand.

    A.    Treating physician opinions

Plaintiff first challenges the ALJ's assignment of little weight to the opinions of Drs. Connelly and Bodner. Specifically, Plaintiff points to an RFC form for Social Security Disability purposes completed by Dr. Connelly on June 10, 2013, as well as the same form questionnaire completed by Dr. Bodner on February 11, 2015. (Tr. at 1230-34, 1970-74). As to these opinions, the ALJ found as follows:

> The undersigned notes that there are opinions from the claimant's treating physicians, including an opinion for Dr. Chris Connelly and Dr. Russ Bodner, of record. However, these opinions are dated subsequent to the date last insured and, therefore, have been given little weight.

(Tr. at 355.) Plaintiff now claims that the timing of the opinions "is not a legally sufficient reason to completely disregard" them.

> In considering Plaintiff's contentions, the Court notes that,
>
> in some instances, medical evidence that post-dates a claimant's DLI may be considered where it is relevant to prove disability prior to that date. Specifically, the Fourth Circuit held in Bird [v. Comm'r of Soc. Sec., 699 F.3d 337, 340-41 (4th Cir. 2012)] "that post-DLI medical evidence generally is admissible in an SSA [Social Security Administration] disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre-DLI condition." 699 F.3d at 341 (citing Moore v. Finch, 418 F.2d 1224, 1226 (4th Cir. 1969)). In the case of medical opinions, the evidence in question "must relate back to the relevant period" and "offer a retrospective opinion on the past extent of an impairment" . . . .

Emrich v. Colvin, 90 F. Supp. 3d 480, 485 (M.D.N.C. 2015). Notably, the claimant in Bird did "not have any medical records dating before his DLI." 699 F.3d at 339. Therefore, the court found the ALJ's refusal to consider post-DLI evidence to be error because "the claimant's retrospective, post-DLI evidence could have been the 'most cogent proof' of the claimant's pre-DLI condition." Emrich, 90 F. Supp. 3d at 487 (citing Bird, 699 F.3d at 341) (citations omitted). Correspondingly, "Bird has . . . repeatedly been found 'inapplicable where there was meaningful evidence of the claimant's disability' or lack of disability during the DIB coverage period." Tolbert v. Colvin, No. 1:15CV437, 2016 WL 6956629, at *4 (M.D.N.C. Nov. 28, 2016) (citing Emrich, 90 F. Supp. 3d at 487 ("[A] linkage between Emrich's pre– and post-DLI depression conditions was unnecessary because Emrich was treated for depression

throughout her disability insurance coverage period, and the ALJ considered whether that direct evidence supported a finding of disability.").

In the present case, Plaintiff argues that, "[e]ven though the [opinions] are dated after the date last insured, they both describe evaluation and treatment from April 7, 2010 for Dr. Connelly and from January 5, 2012 for Dr. Bodner." (Pl.'s Br. at 4-5.) However, as an initial matter, the Court notes that the dates identified by Plaintiff are included on the forms as the date of Plaintiff's "first visit" with that provider (Tr. at 1970) or the length of the physician's contact with Plaintiff (Tr. at 1230), but those dates are not identified by the physicians as the start dates for the limitations set out in their opinions. Rather, all of the questions and answers in the questionnaires are phrased in the present tense, indicating that they relate the severity of Plaintiff's headaches at the time the forms were completed. (Tr. at 1230-34, 1970-74.) This is confirmed by the information set out in the forms, which is consistent with the treatment records at the time of each respective opinion in 2013 and 2015, but is not consistent with the treatment records prior to the DLI.[5] As such, there is no indication, either explicitly or

---

[5] For example, Dr. Connelly's opinion, dated June 6, 2013, reflects that Plaintiff suffers from headaches "10-15 days/month." (Tr. at 1230.) Dr. Connelly's treatment records from May 23, 2013 and August 28, 2013 reflect that Plaintiff at that time was having 2-3 headaches per week (Tr. at 1793, 1800), which is consistent with the information on the 2013 form. However, Dr. Connelly's treatment records from the period between April 7, 2010 and the December 31, 2012 DLI reflect that in 2010, Plaintiff suffered one headache per week (Tr. at 765, 763, 759), that Plaintiff experienced an increase in early 2011, but with medication 100% effective when taken early and with improvement and "doing better" over time (Tr. at 756, 753, 750, 747, 745), and with headaches in 2012 of less than one per month after she began receiving treatment with Botox (Tr. at 740, 739, 736, 735). Plaintiff reported some increase in December 2012, but still below the numbers reflected in the June 2013 opinion, and with the medication "working well." (Tr. at 1789.) Thus, the information in the June 2013 opinion is consistent with Plaintiff's treatment records in 2013, but is not consistent with the treatment records from 2010-2012, so there is no basis to infer that the June 2013 opinion relates back to an earlier time period. Similarly, Dr. Bodner's opinion dated February 11, 2015, reflects that Plaintiff at that time was suffering from headaches "3-4 days per week." (Tr. at 1971.) However, Dr. Bodner's treatment records for the period prior to the DLI reflect that in 2012, Plaintiff was suffering headaches of less than 1 per month, reporting in July 2012 that she had suffered only 3 severe headaches in the 4 months since her last visit, reporting later in July 2012 that she had suffered only 4 bad headaches in the 6 months since January 2012, and reporting in October 2012 that she had suffered only 4 headaches requiring injections in the past 6 months. (Tr. at 740, 739, 736,

8

implicitly, that the forms offer a retrospective opinion on the past extent of an impairment, and the opinions fail to "relate back" as required by Bird.

Moreover, the Court also notes that unlike Bird, there was substantial evidence in the record in the present case regarding Plaintiff's impairment prior to the DLI. Indeed, the substantial medical record in this case reflects that Plaintiff received extensive treatment for her migraine headaches prior to her DLI, primarily by the two physicians in question. (See Tr. at 354.) The ALJ recounted the records from the time period at issue, and noted that

> [a]lthough the claimant has a long history of headaches, her treatment notes, which pre-date her date last insured, suggest that her headaches are largely related to financial and domestic stress. Of note, her son has been diagnosed with schizophrenia and often refuses to take his medication. The claimant's treatment notes are full of complaints regarding her son's criminal activity, drug use, and domestic violence. Moreover, the claimant unfortunately went through both a foreclosure and bankruptcy, which undoubtedly added to her stress. Other stressors include her husband transitioning between jobs and her brother attempting suicide.

(Tr. at 354). The ALJ then cited over 25 treatment notes confirming this point and reflecting the link between these short-term stressors and Plaintiff's headaches. The ALJ then further noted that Plaintiff's medications, particularly Botox, were highly effective in reducing both the number of headaches she experienced and their severity. (Id.) (citing Tr. at 628, 643, 735-37, 739-40, 744, 747, 806, 1025, 1169-70, 1180). In addition, the ALJ noted that Plaintiff's neurological examinations and diagnostic studies (including MRIs and CTs of Plaintiff's brain) were routinely normal during the relevant time period. (Tr. at 354). Finally, the ALJ gave significant weight to the opinion of State Agency Physician Dr. Caviness, who had reviewed

---

735.) Thus, the information in the February 11, 2015 opinion does not reflect the 2012 treatment records, and there is no basis to infer that the February 2015 opinion refers to the period prior to the December 31, 2012 DLI.

9

Dr. Connelly's and Dr. Bodner's treatment records for the period prior to December 31, 2012, as well as all of Plaintiff's other treatment records for that time period, and opined that Plaintiff could perform medium work but must avoid concentrated exposure to unprotected heights, moving machinery, and respiratory irritants including dust, fumes, gases, etc. (Tr. at 355, 420-22). Thus, unlike in Bird, substantial medical evidence existed prior to Plaintiff's DLI for the ALJ to determine whether Plaintiff was disabled before that date.

Accordingly, the ALJ's decision was supported by substantial evidence, and the ALJ did not err in giving little weight to the 2013 and 2015 opinion evidence that was "dated subsequent to the date last insured" (Tr. at 355), given that those opinions did not explicitly or implicitly relate to the period prior to December 31, 2012, and given that the medical record included direct, substantial evidence of Plaintiff's impairment during the DIB coverage period.

Finally, the Court notes that Plaintiff raises additional contentions regarding the evidence and essentially asks the Court to re-weigh the evidence and come to a different conclusion than the ALJ. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Hancock, 667 F.3d at 472. Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [the claimant] is disabled," but rather, "whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained the decision, explained the reasons

for the weight given to the opinion evidence, and supported that explanation with substantial evidence.

B.   Amended onset date

Next, Plaintiff challenges the ALJ's failure to amend the alleged onset date to April 7, 2010, despite her motion to do so as part of her attorney's prehearing summary. (See Tr. at 450, 585.) When Plaintiff filed her claim in November 2012, she alleged a disability onset date of July 4, 2007. However, in a prehearing summary brief, her attorney noted her intent to amend her alleged onset date to April 7, 2010. The onset date was not discussed at the hearing, and the ALJ considered Plaintiff's claims utilizing her original alleged onset date of July 4, 2007. (Tr. at 351, 357.) Plaintiff now argues that ALJ's failure to amend the onset date and review the evidence from April 7, 2010 forward somehow rendered the ALJ's decision unsupported.

"In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." S.S.R. 83–20, 1983 WL 31249, at *2. Although the applicant's allegation as to when disability began "should be used if it is consistent with all the evidence available," the ALJ is not bound by the Plaintiff's alleged onset date in the ultimate determination. Id. at *3. Moreover, an error in the alleged onset date is not, in itself, a basis for remand. Rather, a Plaintiff also must demonstrate that it caused her prejudice. See Alston v. Colvin, No. 4:13cv65, 2014 WL 934532, at *9 (E.D. Va. Mar. 10, 2014) (finding the ALJ's failure to amend the alleged onset date harmless where the plaintiff "has not

demonstrated that consideration of a greater period of time renders the ALJ's decision unsupported").

In the present case, Plaintiff moved to amend her alleged onset date because, although "[r]ecords of her ongoing migraine headaches are documented from 2007[,] . . . they became more frequent when she started seeing Dr. Christopher Connelly on a more regular basis beginning April 7, 2010." (Tr. at 450.) Plaintiff also noted that "Dr. Connelly's RFC dates her symptoms at the severity and frequency he describes in his RFC from April 7, 2010." (Tr. at 585.) In her brief, Plaintiff further contends that "Dr. Connelly's RFC supports the fact that the Botox injections [performed by Dr. Bodner] did not [] reduce the frequency or intensity of the headache symptoms at any time after the amended onset date and before the date last insured." (Pl.'s Br. at 8.) In other words, Plaintiff implies that, had the ALJ considered only the evidence between April 7, 2010 and December 31, 2012, he would have found Plaintiff disabled.

However, Plaintiff has not shown that consideration of a greater period of time rendered the ALJ's decision unsupported by substantial evidence. A review of the ALJ's decision instead reveals that the ALJ considered all of the medical evidence pertaining to Plaintiff's impairments, including the post-April 7, 2010 evidence Plaintiff now emphasizes. The ALJ then concluded that Plaintiff "was not under a disability, as defined by the Social Security Act, *at any time* from July 4, 2007, the alleged onset date, through December 31, 2012, the date last insured." (Tr. at 357.) In coming to this conclusion, the ALJ specifically, and properly, discounted the opinions of Dr. Connelly on which Plaintiff now relies. (Tr. at 355.)

As noted above, the ALJ also recounted the following regarding the efficacy of Plaintiff's headache treatments, particularly during 2012:

> [Plaintiff's] treatment notes . . . indicate that her prescribed medications, including Treximet and Frova, have helped to relieve her headaches, while [Plaintiff] reported that Botox injection therapy was "extremely helpful" and the "best treatment she [had] ever had" for her headaches. Notably, when [Plaintiff] followed up at Northeast Neurology in October 2012, she reported that she had only had two migraines since her last visit, which were related to stress. . . . As of her follow up visit at Northeast Neurology in December 2012, [Plaintiff] reported that her medications were still working and that she was only having headaches about twice a week. . . . At that time, her neurological examination was again normal. . . . Overall, her status was described as "improved" at that time.

(Tr. at 354) (citing Tr. at 628, 643, 735-37, 739-40, 744, 747, 806, 1025, 1169-70, 1180). In short, the medical evidence of record, as considered and recounted by the ALJ, clearly belies Plaintiff's contention that "the Botox injections did not [] reduce the frequency or intensity of [her] headache symptoms at any time after the amended onset date and before the date last insured." (Pl.'s Br. at 8.) The ALJ considered the record and the medical evidence at length, with a particular focus on the evidence from 2010 through 2012, in concluding that Plaintiff was not disabled prior to December 31, 2012. There is no basis to conclude that any alleged failure to move the alleged onset date from 2007 to 2010 affected the determination. Accordingly, Plaintiff's claim that the ALJ's failure to use the amended onset date prejudiced her is similarly without merit.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #8] be

DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #12] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 22nd day of August, 2017.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge